# UNITED STATES DISTRICT COURT
для the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Black Apple iPhone )
Model: 11 )
Seized as FP& F: 2025255200002301 Item: 002 )

Case No.   24MJ9010

**FILED**
Nov 13 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ VeronicaCota   DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means)*.

Date:   11/12/2024

*Judge's signature*

City and state:   El Centro, California     HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** Black Apple iPhone
Model: 11
Seized as FP& F: 2025255200002301 Item: 002
Seized from Chloe Nicole CARDENAS
**(Target Device #1)**

**A-2:** Black Samsung Galaxy Cellphone
Model: A14
Seized as FP& F: 2025255200002301 Item: 003
Seized from Johanan ZAMORA-Mota
**(Target Device #2)**

**A-3:** Purple Apple iPhone
Model: 14 Pro Max
Seized as FP& F: 2025255200002301 Item: 004
Seized from Brandy Ariyah GALVAN
**(Target Device #3)**

**A-4:** Green Android Cellphone
Model: Mini
Seized as FP& F: 2025255200002301 Item: 006
Seized from Jose Luis MARTINEZ-Valadez
**(Target Device #4)**

as further described in Attachments A-1 to A-4, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Chloe Nicole CARDENAS (CARDENAS) and Brandy Ariyah GALVAN (GALVAN) for transportation of illegal aliens Johanan ZAMORA-Mota (ZAMORA), and Jose Luis

MARTINEZ-Valadez (MARTINEZ) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from CARDENAS, GALVAN, and the Material Witnesses on or about October 31, 2024, incident to the arrest of CARDENAS, GALVAN, and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of

undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.  Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.  The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On October 31, 2024, Border Patrol Agents (BPA) assigned to the El Centro Station Anti-Smuggling Unit (ELS ASU) were conducting operations in the El Centro Border Patrol Station Area of Responsibility (AOR). At approximately 8:15 a.m., BPAs in the El Centro Station Remote Video Surveillance System (RVSS) operator notified BPAs in the field that two individuals were walking north in the desert from the International Boundary Fence (IBF) near Exit 6 and the Drag. BPAs established a perimeter in the area and began conducting surveillance. At approximately 8:20 a.m., a Mobile Surveillance Capabilities System (MSC) operator in Zone 3 observed two individuals, later identified as Johanan ZAMORA-Mota and Jose Luis MARTINEZ-Valadez, walking north through the desert occasionally hiding in the brush.

11. At approximately 9:25 a.m., an aerial surveillance unit observed a small maroon SUV, later identified as a 2024 Hyundai Venue bearing California license plates (Hyundai) traveling westbound on Highway 98 and stop on the side of the road. The surveillance unit observed ZAMORA and MARTINEZ run from their hiding place and enter the rear of the vehicle. The vehicle continued to travel westbound on Highway 98 and BPAs advised all units of their observations. BPA J. Elizalde, driving a marked Border Patrol vehicle, began to travel eastbound on Highway 98 to locate the vehicle. BPA Elizalde positively identified the Hyundai, made a U-turn, and attempted to catch up to the Hyundai. BPA Elizalde activated his emergency lights and siren to conduct a vehicle stop and the Hyundai yielded approximately two miles west of Coyote 2 and Highway 98. BPA Elizalde approached the Hyundai and identified himself as a BPA. The driver of the Hyundai was later identified as CARDENAS, and the passenger of the vehicle was identified as GALVAN. CARDENAS and GALVAN stated they were United States citizens. ZAMORA and MARTINEZ, the two passengers in the rear of the vehicle,

1  identified themselves and admitted to being citizens of Mexico, illegally present in the
2  United States. CARDENAS, GALVAN, ZAMORA and MARTINEZ were removed from
3  the Hyundai and placed under arrest and were transported to the Calexico Border Patrol
4  Station for further processing.

5      12.    During a post-Miranda statement, GALVAN stated she was going with her
6  cousin, CARDENAS, to San Diego, California. When asked why they were taking
7  Highway 98 and not Interstate 8 to get to San Diego, she said she did not know. GALVAN
8  stated they stopped to pick up two people and did not know who they were. GALVAN
9  stated that they did not speak when they got in the vehicle. When asked if she knew where
10 they wanted to go, she said she didn't and that she was just going to take them to San Diego
11 with her GALVAN stated she was scared when she stopped and saw two people running
12 up to her vehicle to get in.

13     13.    Material Witness ZAMORA stated he is a citizen of Mexico. ZAMORA
14 stated he does not have any legal documents allowing him to live in the United States.
15 ZAMORA stated he agreed to pay approximately nine thousand five hundred USD to be
16 illegally smuggled into the United States and taken to a destination unknown. ZAMORA
17 was told by the smuggler via radio (walkie talkie) that a red vehicle was going to stop once
18 he was near the pickup location. ZAMORA stated that a red vehicle stopped and that the
19 two people in the vehicle waived him and MARTINEZ to get in the vehicle. ZAMORA
20 and MARTINEZ ran towards the highway and got into the back seat.

21     14.    Material Witness MARTINEZ stated he made arrangements to pay $8000
22 USD to be smuggled across the border. MARTINEZ stated that he was given instructions
23 via the radio. MARTINEZ was instructed to wait by a bush close to the paved road and
24 wait for a red vehicle to pick him up. MARTINEZ stated that when the vehicle arrived, the
25 passenger (GALVAN) began to give him hand signals to enter the vehicle. MARTINEZ
26 stated that he entered the vehicle through the rear passenger door where he noticed two
27 females in the driver and front passenger seats. MARTINEZ stated he was instructed by
28

1  one of the females to lower their heads down, after these instructions no other dialogue
2  took place. MARTINEZ stated his intended destination was Los Angeles, California.

3      15.   During a search incident to arrest of CARDENAS, GALVAN, and the
4  Material Witnesses, four cellphones were found: a black Apple iPhone (Target Device #1)
5  was found on CARDENAS' person by SBPA J. Elizalde and CARDENAS claimed
6  ownership of this cellphone. A black Samsung Galaxy cellphone (Target Device #2) was
7  found on ZAMORA's person by SBPA J. Elizalde and ZAMORA claimed ownership of
8  this cellphone. A purple Apple iPhone (Target Device #3) was found on GALVAN's
9  person by SBPA J. Elizalde and GALVAN claimed ownership this cellphone. A green
10 Android cellphone (Target Device #4) was found on MARTINEZ's person by SBPA J.
11 Elizalde and MARTINEZ claimed ownership of this cellphone.  All cellphones were seized
12 as evidence.

13      16.   I am aware that smuggling conspiracies require planning to successfully
14 evade detection by law enforcement.  In my professional training and experience, this may
15 require planning and coordination in the days and weeks prior to the event.  Additionally,
16 co-conspirators are often unaware of the subject's arrest and will continue to attempt to
17 communicate with the subject after the arrest to determine their whereabouts.  Given this,
18 I respectfully request permission to search the Target Devices for data beginning on
19 October 1, 2024, up to and including November 1, 2024, the day after the arrest of
20 CARDENAS, GALVAN, and the Material Witnesses.

## METHODOLOGY

22      17.   It is not possible to determine merely by knowing the cellular telephone's
23 make, model and serial number, the nature, and types of services to which the device is
24 subscribed, and the nature of the data stored on the device. Cellular devices today can be
25 simple cellular telephones and text message devices, can include cameras, can serve as
26 personal digital assistants, and have functions such as calendars and full address books,
27 and can be minicomputers allowing for electronic mail services, web services, and
28 rudimentary word processing. An increasing number of cellular service providers now

allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//

# CONCLUSION

20. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that CARDENAS, GALVAN, and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by CARDENAS, GALVAN, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 12th day of November, 2024.

_____  9:33 a.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**         Black Apple iPhone
              Model: 11
              Seized as FP& F: 2025255200002301 Item: 002
              Seized from Chloe Nicole CARDENAS
              **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**　　　　Black Samsung Galaxy Cellphone
　　　　　　　Model: A14
　　　　　　　Seized as FP& F: 2025255200002301 Item: 003
　　　　　　　Seized from Johanan ZAMORA-Mota
　　　　　　　**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**         Purple Apple iPhone
            Model: 14 Pro Max
            Seized as FP& F: 2025255200002301 Item: 004
            Seized from Brandy Ariyah GALVAN
            **(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**         Green Android Cellphone
             Model: Mini
             Seized as FP& F: 2025255200002301 Item: 006
             Seized from Jose Luis MARTINEZ-Valadez
             **(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of October 1, 2024, up to and including November 1, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.